HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

THE VICTORY CENTER, et al.,

             Plaintiffs,

     v.

CITY OF KELSO, et al.,

             Defendants.

No. 3:10-cv-5826-RBL

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
[Dkt. #28]

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment [Dkt. #28] and Plaintiffs' Response and Motion for Summary Judgment [Dkt. #34]. After careful review of the pleadings, declarations, and briefing in support of both motions, Defendants' motion is granted in part and denied in part, and Plaintiffs' motion is denied.

## I. BACKGROUND

The Victory Center is a nonprofit entity affiliated with the Kelso Church of Truth, a Christian nondenominational congregation. Pls.' Compl. at 3–4 [Dkt. #1]; Decl. of Michael Kerins, Ex. Q at 62 [Dkt. #30-1]. According to the Victory Center's articles of incorporation, the entity's purpose is "[t]o hold educational sessions in life skills for youth and adults, cultural events and conferences." Kerins Decl. at 62 [Dkt. #30-1]. In 2006, the Victory Center began its operations in cohabitation with the Church of Truth at 401 Pacific Avenue South in Kelso,

Washington.  *Id.*  It remained in this location until 2008, when the church and the Victory Center relocated to Longview, Washington, a short distance from south Kelso.  Pls.' Compl. at 5 [Dkt. #1].

During this time, the City of Kelso was working to update its zoning ordinances and create a synergy among land uses in a small core of the city known as the Commercial Town Center (CTC).  Defs.' Mot. at 3 [Dkt. #28].  In an effort to encourage pedestrian-oriented retail activity on the street level within a four-block subarea of the CTC, the city amended its Development Regulations in April of 2009.  *Id.* at 4.  The amended version of the zoning regulations provide a table of allowable land uses within each zoning district, and it prohibits the following uses within the CTC "on the ground floor on Pacific Ave., South between Oak and Maple Streets": recreation facilities, active; fitness centers and sports clubs; participant sports and recreation—indoor; auditoriums, clubhouses, and meeting halls; community centers and recreation facilities; religious facilities; family day care and child care centers; personal and professional services; professional offices; and retail sales and services with screened outdoor storage.  KMC 17.15.020.  The CTC zone allows—including on the ground floor of the four-block subarea—most retail establishments, restaurants, and entertainment facilities, as well as educational, cultural, or governmental uses.[1]  *Id.*

In 2010, the property at 401 Pacific Avenue South became available after a martial arts studio vacated the premises, and the Victory Center entered into negotiations to purchase the property from Boyd Real Estate Investments.  Defs.' Mot. at 6.  Because this address is located within the CTC's pedestrian retail area, Michael Kerins, the city's Director of Community Development, contacted Leonid Pisarchuk, the Victory Center's authorized representative, to

---

[1] The table simply states, "Educational, cultural, or governmental."  Unlike other allowable uses, it is unclear exactly what these adjectives are intended to modify.

ORDER - 2

advise him of the zoning changes.  *Id.*  About one month later, Mr. Pisarchuk signed a lease

agreement to rent the building.  *Id.*

On July 19, 2010, the city served the Victory Center with a Notice of Zoning Ordinance

Violation.  *Id.*  Plaintiffs' counsel responded by letter and indicated the Victory Center was not a

church, but rather a cultural and educational center, and therefore compliant with the city's new

zoning regulations.  *Id.* at 7.  After reviewing the Victory Center's supporting documentation, the

city issued a formal interpretation of use; it concluded the Victory Center functioned more like a

community center, which is a prohibited use on the first floor of 401 Pacific Avenue South.  *Id.*;

*see also* KMC 17.15.020.

The Victory Center appealed this determination to the City of Kelso Hearing Examiner.

Defs.' Mot. at 7 [Dkt. #28].  Both parties were represented by counsel at the hearing, and each

side was afforded an opportunity to present evidence, take testimony, and cross-examine

opposing witnesses.  Kerins Decl. at 61 [Dkt. #30-1].  At the conclusion of testimony, the

hearing examiner continued the matter to allow both parties to provide supplemental briefing on

various legal issues that arose during the hearing.  *Id.* at 62.  Because the zoning regulations did

not expressly define "community center" or the words "educational, cultural, or governmental,"

each party presented definitions of "community center" and "cultural center" for the hearing

examiner's consideration.  *Id.* at 66.  The hearing examiner accepted the city's definitions of both

terms.  *Id.* at 67.  Next, the hearing examiner concluded "that the [Victory Center's] activities

constitute a 'community center' and as such are prohibited under the City's ordinance."  *Id.* at

67.

The Victory Center did not appeal the hearing examiner's determination and instead filed

this lawsuit.  It alleges sixteen causes of action, including violations of the Religious Land Use

and Institutionalized Persons Act of 2000 (RLUIPA); free exercise, freedom of speech, freedom of assembly, equal protection, and due process claims under the First and Fourteenth Amendments to the United States Constitution and the corresponding articles of the Constitution of the State of Washington; violations of the Washington Administrative Procedure Act; and conspiracy to violate civil rights under 42 U.S.C. §§ 1985–86.  Pls.' Compl. at 9–16 [Dkt. #1].

The City of Kelso moves for summary judgment with respect to all sixteen counts.  The Victory Center has filed a response and motion for summary judgment with respect to the RLUIPA and constitutional claims, and the Court will consider both motions concurrently.

## II. ANALYSIS

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the nonmoving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

**A.  Issue Preclusion**

The Victory Center is barred from arguing it is a cultural center within the meaning of the city's zoning regulations.  The doctrine of issue preclusion prevents relitigation of issues of fact or law that have been "actually decided" after a "full and fair opportunity" to be heard.  *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988).  The Victory Center argued it was a "cultural center" on appeal to the Kelso Hearing Examiner, who determined the Victory Center functioned more like a "community center."  Kerins Decl. at 67 [Dkt. #30-1].  The Victory Center did not appeal this ruling, and it had a full and fair opportunity to litigate this issue.  *See id.* at 68.

The Victory Center, however, is not precluded from arguing it is a religious assembly because the Hearing Examiner expressly declined to make a finding on this point: "The issue of whether RLUIPA applies is not properly before me as, again, neither party claims that the Victory Center is a 'religious assembly or institution' and, secondly, my jurisdiction does not extend to issues of federal regulation."  *Id.*

**B. RLUIPA Claims**

In 1993, Congress enacted the Religious Freedom and Restoration Act (RFRA) in response to the Supreme Court's decision in *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 878–82 (1990), which held that the Free Exercise Clause "does not inhibit enforcement of otherwise valid laws of general application that incidentally burden religious conduct."  *Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 985 (9th Cir. 2006) (internal quotation marks omitted).  But the Supreme Court invalidated RFRA because it exceeded Congress's authority under Section Five of the Fourteenth Amendment.  *See City of Boerne v. Flores*, 521 U.S. 507, 533 (1997).  Congress then wrote the Religious Land Use and

Institutionalized Persons Act so that it "would only apply to regulations regarding land use and prison conditions." *Guru Nanak*, 456 F.3d at 986.  A number of Circuit Courts of Appeal have upheld the constitutionality of RLUIPA.  *See, e.g.*, *Guru Nanak*, 456 F.3d at 993–96 ("RLUIPA is a congruent and proportional response to free exercise violations because it targets only regulations that are susceptible, and have been shown, to violate individuals' religious exercise."); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1236–43 (11th Cir. 2004).

RLUIPA imposes two separate limitations on the government's regulation of land use.  First, the government cannot impose "a substantial burden" on "a religious assembly or institution" unless the burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc(a)(1).  Second, the government cannot impose or implement a land use regulation that "treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution," or "discriminates against any assembly or institution on the basis of religion," or "totally excludes" or "unreasonably limits" religious assemblies from a jurisdiction.  42 U.S.C. § 2000cc(b).

**1. Substantial Burden Provision Under RLUIPA**

The substantial burden prong of RLUIPA applies only if one of three conditions is present: (1) if the land use regulation is imposed in a program or activity that receives federal funding; (2) if the land use regulation's burden affects interstate commerce; or (3) if the land use regulation is imposed in a system where the government makes individualized assessments of the property's proposed use.  42 U.S.C. §§ 2000cc(a)(2)(A)–(C).  The Victory Center does not specify which of the three threshold conditions is satisfied here, but the city acknowledges that

"a zoning scheme requires . . . an individualized assessment . . . for each type of proposed land use." Defs.' Mot. at 12 [Dkt. #28] (citing *Guru Nanak*, 456 F.3d at 987). Without inquiring further, the Court assumes the substantial burden prong of RLUIPA applies to the City of Kelso's zoning scheme because the city makes individualized assessments of property use.

The next question is whether the scheme imposes a substantial burden on the Victory Center's religious exercise and, if so, whether this burden furthers a compelling governmental interest in the least restrictive manner possible. The Victory Center bears the burden to prove the city's zoning regulations impose a substantial burden on religious exercise. *Guru Nanak*, 456 F.3d at 988. "For a land use regulation to impose a substantial burden, it must be oppressive to a significantly great extent" and "impose a significantly great restriction or onus upon" religious exercise. *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004) (internal quotation marks omitted). In other words, the burden must amount to "more than an inconvenience on religious exercise." *Midrash Sephardi*, 366 F.3d at 1227 (internal quotation marks omitted).

The City of Kelso's zoning regulations do not impose a substantial burden on the Victory Center's religious exercise because the Victory Center is free to locate its facility anywhere outside the CTC's four-block subarea dedicated to pedestrian retail activity. The Victory Center could even locate its facility within this subarea anywhere above the first floor. The city estimates that the restricted area represents less than one eighth of one percent of zoned land within the city limits, Defs.' Mot. at 4 [Dkt. #28], and locating outside of this small area does not substantially impede the Victory Center's ability to practice religious activities. In *Midrash Sephardi*, two synagogues argued zoning regulations that prohibited religious facilities in seven out of eight zoning districts imposed a substantial burden on religious exercise because the

ORDER - 7

congregants would have to walk longer distances to attend services, putting a significant burden on the ill, young, and elderly.  366 F.3d at 1227.  The court sympathized with the congregants' greater inconvenience but held that "walking a few extra blocks" is not "'substantial' within the meaning of RLUIPA."  *Id.* at 1228.  Similarly, the Victory Center has not presented any evidence that 401 Pacific Avenue South bears any religious significance to the Church of Truth's religious tenets, and any burden imposed by the CTC's land use restrictions is merely a matter of personal or economic convenience.  The statute does not impose an affirmative obligation upon the government "to facilitate or subsidize the exercise of religion."  *Mayweathers v. Newland*, 314 F.3d 1062, 1069 (9th Cir. 2002).

The Victory Center relies on *Cottonwood Christian Ctr. v. Cypress Redevelopment Agency*, 218 F. Supp. 2d 1203 (C.D. Cal. 2002), for the proposition that a government imposes a substantial burden on religious exercise when it restricts an assembly's ability to lease a desired space.  In *Cottonwood*, the court took particular note of that church's large and expanding congregation—over 4,000 people—and concluded the redevelopment agency's use of eminent domain to acquire a property Cottonwood had planned to develop into a church imposed a substantial burden on Cottonwood's ability to practice its religion in a single location.  218 F. Supp. 2d at 1226–27.  The Victory Center argues there is no other comparable property in the City of Kelso to perform its activities.   This argument is unsupported in the pleadings and filings, and it is unpersuasive.  The Kelso Church of Truth has approximately forty congregants, and the Victory Center has not advanced any compelling reason why this particular location is better suited for its religious practices than any other nearby location.  The City of Kelso's land use regulations do not constitute "more than an inconvenience on religious exercise."  *Midrash Sephardi*, 366 F.3d at 1227 (internal quotation marks omitted).  Because the Victory Center has

failed to carry its initial burden, the Court need not consider whether the regulations further a compelling governmental interest in the least restrictive manner possible.

**2. Equal Terms Provision Under RLUIPA**

Separate and in addition to RLUIPA's substantial burden provision, the statute also prohibits a government from "impose[ing] or implement[ing] a land use regulation in a manner that treats a religious assembly on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1). The Court of Appeals for the Ninth Circuit recently construed the equal terms section of the statute. *See Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1170–73 (9th Cir. 2011). "Under the equal terms provision, analysis should focus on what 'equal' means in the context." *Id.* at 1172. "The city violates the equal terms provision only when a church is treated on a less than equal basis with a secular comparator, similarly situated with respect to an accepted zoning criteria." *Id.* at 1173. If the Victory Center establishes a prima facie case for unequal treatment, the burden then shifts to the city to show otherwise. *Id.*

Any land use regulation that restricts religious exercise must be written narrowly to achieve the government's intended and legitimate purpose. *See Centro Familiar*, 651 F.3d at 1174–75. In *Centro Familiar*, the court concluded Yuma's land use ordinance restricting available property uses in the city's "Old Towne District" treated religious institutions on a less than equal basis with similarly situated secular institutions because the zoning scheme permitted "membership organizations" as of right while it required "religious organizations" to obtain a conditional use permit. *Id.* at 1166–67, 1171 ("[T]he express distinction drawn by the ordinance establishes a prima facie case for unequal treatment."). The city passed the ordinance in order to limit restrictions on the issuance of liquor licenses within the Old Towne District, but the court

held the ordinance's language was too broad because it affected all religious activities, not just churches (only "churches" implicated a 300-foot buffer for liquor licenses).  *Id.* at 1174–75.

The city points out its zoning scheme does not restrict religious expression to this degree. For example, the Victory Center could conceivably open a religious bookstore within the CTC's designated retail district.  Defs.' Mot. at 19 [Dkt. #28].  While this may be true, the Court's inquiry turns on whether Kelso's land use restrictions treat the Victory Center "on a less than equal basis with a secular comparator, similarly situated with respect to an accepted zoning criteria."  *Centro Familiar*, 651 F.3d at 1173.

The first step in determining the "secular comparators" is to examine the Victory Center's activities, which focus on theology classes, social services, literacy and tutoring, exercise and nutrition, and ministry services.[2]  Thus, the Victory Center's secular comparators listed in the city's zoning regulations are: community centers, club houses, meeting halls, recreation facilities, fitness centers, and educational or cultural facilities.  *See* KMC 17.15.020. The zoning regulations equally exclude all of these comparators from the CTC's designated retail area, except for "educational, cultural, or governmental" uses.  *Id.*  It is unclear what the city means by "educational, cultural, or governmental."  Without further development of these terms, genuine issues of material fact exist with respect to whether the Victory Center, an entity arguably engaged in educational and cultural pursuits, is treated on less than equal terms with secular educational and cultural institutions that are free to locate within the CTC's pedestrian retail area.

A finding that the city's regulations violate the equal terms provision of RLUIPA as a matter of law, however, would go too far.  If the city had limited the allowable educational,

---

[2] For a more comprehensive "list of activities that the Victory Center presently undertakes . . . or has plans to undertake," *see* Kerins Decl., Ex. Q at 64 [Dkt. #30-1].

cultural, or governmental uses to retail purposes, the city would probably "demonstrate that the less-than-equal-terms are on account of a legitimate regulatory purpose, not the fact that the institution is religious in nature." *Centro Familiar*, 651 F.3d at 1172.  But because the city has failed to articulate its justification for treating the Victory Center differently from nonretail educational and cultural uses, this question remains open for finder of fact.

### C. Federal Constitutional Claims

Next, Plaintiffs argue the City of Kelso's exclusion of religious organizations from the CTC's pedestrian retail area violates provisions of the First and Fourteenth Amendments to the United States Constitution.

### 1. Free Exercise of Religion

The Establishment and Free Exercise Clauses of the First Amendment, applied to the States through the Fourteenth Amendment, provide that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. Const. amend. I. Laws that incidentally burden a particular religious practice, however, do not trigger heighted judicial review if the law is "neutral and generally applicable."  *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).

The Victory Center argues the city's zoning regulations violate the First Amendment by prohibiting the free exercise of religion within the CTC's pedestrian retail area.  The city, on the other hand, couches the regulation as a permitted limitation that does not deprive the Victory Center from observing its religious tenets.  *See Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 449–51 (1988) (holding the Free Exercise Clause did not prohibit the government from permitting timber harvesting and road construction in an area traditionally used for religious purposes).

The city's zoning regulations do not "prohibit the free exercise" of religion.  Unlike the law at issue in *Lukumi*, which prohibited an activity central to the Santeria faith (the ritual slaughter of animals), the city's zoning regulations do not prohibit or impede the Victory Center's ability to practice its religion.  *See* 508 U.S. at 524–28.  A religious organization does not possess a "constitutional right to be free from reasonable zoning regulations."  *Messiah Baptist Church v. Cnty. of Jefferson*, 859 F.2d 820, 826 (10th Cir. 1988).  The city's zoning scheme does not offend the Free Exercise Clause because the zoning regulations only incidentally burden the Victory Center's free exercise, and the regulations are neutral and generally applicable to other nonretail property uses.

**2. Freedoms of Speech & Assembly**

The First Amendment further provides, "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people peacefully to assemble."  U.S. Const. amend. I.  Victory Center contends the City of Kelso's zoning regulations unconstitutionally abridge its right to engage in religious speech and assembly.  This is an inaccurate assertion.  Nothing in the zoning regulations curtails the Victory Center's ability to peacefully assemble and speak freely within the CTC's pedestrian retail area.  Even if the Victory Center is unable to lease building space on the first floor of this area, its members are still permitted to gather in the public spaces and share Victory Center's message with the public citizenry.

**3. Due Process & Equal Protection**

The Fourteenth Amendment guarantees equal protection under the law and protects individuals from government deprivation of life, liberty, and property without due process of law.  U.S. Const. amend. XIV.  The Victory Center's due process and equal protection arguments merge, but the general grievance is that the City of Kelso's zoning regulations

impermissibly target religious institutions for discriminatory treatment and interfere with the fundamental right of free exercise of religion.

The Due Process Clause provides the textual basis for unenumerated fundamental rights. If a fundamental right has been infringed, the court must determine whether the law infringing on the right is sufficiently related to a compelling governmental purpose.  The free exercise of religion is certainly a substantive due process right because it is enumerated in the First Amendment, but the zoning regulations do not infringe the right.  Therefore, there is no substantive due process violation and the Court need not consider whether the law is narrowly tailored to achieve a compelling governmental interest.

"Equal protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Mass Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 (1976) (citing *San Antonio Sch. Dist. v. Rodriguez*, 411 U.S. 1, 16 (1973)).  Because the law in question does not impermissibly interfere with the Victory Center's free exercise rights, heightened judicial review is triggered only if the classification "operates to the peculiar disadvantage" of a suspect class.  The Court concludes the Victory Center is not a member of an established "suspect class," such as a racial minority, that implicates either strict or intermediate scrutiny.  Thus, the zoning regulations must be sustained if they are rationally related to a legitimate governmental interest.

Some classifications that disadvantage quasi suspect classes have been held to violate equal protection principles under rational basis review, however.  *E.g.*, *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) (invalidating a zoning ordinance that required a group home for the developmentally disabled to obtain a special use permit while other groups could

locate as of right); *Love Church v. City of Evanston*, 671 F. Supp. 515 (N.D. Ill. 1987) (holding an ordinance that required a church to obtain special use permit violated the Equal Protection Clause).  Even if the Court were to accept that the Victory Center is a member of a quasi suspect class, the zoning regulations equally disadvantage nonreligious entities.  *See* KMC 17.15.020. Furthermore, the zoning regulations are rationally related to achieve a legitimate governmental purpose, namely, to create a centralized retail synergy and encourage economic growth in the City of Kelso's downtown core.  *See, e.g.*, *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68 (1981) ("The power of local governments to zone and control land use is undoubtedly broad and its proper exercise is an essential aspect of achieving a satisfactory quality of life.").  The City of Kelso's land use regulations do not violate the Equal Protection Clause.

### D. State Constitutional Claims

The Constitution of the State of Washington protects "freedom of conscience in all matters of religious sentiment, belief and worship."  Wash. Const. art I, § 11.  This constitutional protection does not guarantee "the right to be free of all government regulation," however.  *N. Pac. Union Conference Ass'n of Seventh Day Adventists v. Clark County*, 74 P.3d 140 (Wash. Ct. App. 2003).  In evaluating land use and zoning restrictions that impede free exercise, Washington courts "require a very specific showing of hardship to justify exemption from land restrictions."  Id. at 32 (citation omitted) (internal quotation marks omitted).  As explained in the Court's analysis above, the Victory Center simply has not made a specific or persuasive showing of "hardship" that would implicate a state constitutional violation.

### E. Violations of the Washington Administrative Procedure Act

Washington's Administrative Procedure Act (WAPA) governs state administrative rulemaking and adjudication procedures.  *See* RCW 34.15.  The Victory Center argues the City

of Kelso's land use determination was arbitrary and capricious in violation of the WAPA. But the WAPA only applies to "state agencies" administering statewide programs. RCW 34.15.010; *Kitsap Cnty. Fire Prot. Dist. No. 7 v. Kitsap Cnty. Boundary Review Bd.*, 943 P.2d 380 (Wash. Ct. App. 1997). As a local municipality, the City of Kelso is not bound by the WAPA, and the Court need not consider whether the City's determination of use was arbitrary and capricious.

### F. Conspiracy to Violate Civil Rights & Failure to Prevent a Conspiracy Under 42 U.S.C. §§ 1985–86

The Victory Center has not provided any evidence of a conspiracy between Mr. Kerins and the city to deprive the Plaintiffs of their civil rights under 42 U.S.C. § 1985. In fact, Mr. Kerins began the process of amending the city's land use regulations, and the City Council passed the amended regulations, *before* the Victory Center leased 401 Pacific Avenue South. Defs.' Mot. at 21 [Dkt. #28]. There is no indication that the city sought to restrict available land uses with the CTC's four-block subarea for any reason other than to encourage pedestrian retail traffic, and certainly not to affirmatively discriminate against the Victory Center. Because the Victory Center's section 1985 claim fails, its section 1986 claim for failure to prevent a conspiracy also fails. *See Trerice v. Pederson*, 769 F.2d 1398, 1403 (9th Cir. 1985).

### G. Qualified Immunity

The doctrine of qualified immunity protects city officials from personal liability for an action taken in their official capacity so long as the action is objectively reasonable and does not violate a clearly established federal right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Mr. Kerins's effort to retool and subsequently enforce the City of Kelso's zoning scheme is objectively reasonable and constitutes an official action within the scope of his position as Director of Community Development. While the zoning regulations may or may not violate the

equal terms provision of RLUIPA, the Victory Center "must demonstrate that the contours of the rights at issue here (constitutional and RLUIPA-derived) were sufficiently clear that a reasonable official would understand that what he was doing violates those rights." *Hale O Kaula Church v. Maui Planning Com'n*, 229 F. Supp. 2d 1056, 1068 (D. Haw. 2002). The Court cannot say with confidence that the contours of RLUIPA are sufficiently clear as courts continue to grabble with the statute's implications; thus, Mr. Kerins is entitled to qualified immunity.

### III. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment [Dkt. #28] is GRANTED IN PART with respect to all of the federal and state constitutional claims, the substantial burden provision of RLUIPA, the conspiracy claims, and the WAPA claim. Defendants' motion [Dkt. #28] is DENIED IN PART with respect to the less than equal terms provision of RLUIPA. Plaintiffs' Motion for Summary Judgment [Dkt. #34] is DENIED. Michael Kerins's request for qualified immunity is GRANTED.

**IT IS SO ORDERED.**

Dated this 4th day of April, 2012.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE